And we'll move to our last case this morning, Connor v. Greene. Mr. Sabin. May it please the court, counsel. Michael Connor is in prison for life. He's been there for the past decade. He will continue to be there for the rest of his natural life, unless I can convince you otherwise. It's an awesome responsibility that we law practitioners, especially criminal defense lawyers, have in the criminal justice system. Judge, prosecutor, defense attorneys alike, we are to ensure that the system is fair and just. And I will submit to your honors that Michael Connor did not receive the effective assistance of counsel when his lawyer abdicated his responsibility to advise him correctly during the pre-bargaining stage of his case. When we are considering whether a defendant would have accepted a plea offer, is it, do you think, an objective or subjective standard? I think you consider both. That was the problem in this case. There was primarily subjective evidence that the lower court considered. In particular, what was pretty damaging and damning to Mr. Connor was a statement that he made in allocution at the time of sentencing when he said essentially that he couldn't or wouldn't plead guilty to something that he believed he was innocent from. So the court took that into consideration. The court also considered, I guess, his demeanor. In the post-conviction, after evidence was heard, the court also commented on, it felt like Michael Connor had lied when he said he was admonished. The sentence that he faced was six to 30 years. The court really gave, I think, almost jumped to a conclusion to reach that decision in finding that he lied. Many people, when sitting in a particular situation, bring different experiences and perspectives to what they see and envision. From Michael Connor's perspective, he believed his lawyer told him six to 30 years. The court says, well, that's not true. You were admonished that it was six to 60 years you were facing with a cursory initial appearance at a preliminary hearing. And from Mr. Connor's perspective, he never received an appropriate admonition as to what he would face if he goes to trial and loses. The problem here is that we're not deciding this Strickland claim on plenary review. We're filtering the claim through ed pedeference and the state court's credibility findings, rejecting your client's credibility when he says he would have accepted a plea agreement and his mother's efforts to corroborate that. She was rejected as not a credible witness as well. Correct, yes. And those credibility findings are presumed correct unless there's clear and convincing evidence to the contrary. And Judge Bruce in the district court below, when he, on his own, granted the certificate of appealability, essentially asserts just what you say, but then takes it a step further and says, is the disparity between what a defendant expects to receive if convicted or what his sentence may be and what he actually receives is so great that that can clearly and convincingly rebut and overcome the credibility defining, which I submit was sketchy. But for purposes of our discussion, can that disparity in and of itself rise to the level that it rebuts clear and convincingly the credibility decision that the trial court made and was affirmed by the appellate court? Here the disparity is unbelievable. It is undisputed that Mr. Conner had been offered an 18-year sentence. He had been led to believe, and there's really no evidence to the contrary, that if he goes to trial and lost, that there would be no trial tax and that he could still expect a nominal sentence, maybe slightly more than the 18 years offered, simply because he had no criminal record. His lawyer led him to believe that, and the fact of the matter is, if convicted in both cases, there is no other sentence permitted, consecutive sentence permitted, other than natural mandatory life. Now, his lawyer did not advise him of that fact. The court did not advise him of that fact, and the only time that was stated in open court prior – well, it wasn't stated in open court prior to trial. It was only upon conviction where the state moved to revoke his bond and said he's faced with mandatory life. I think anyone who goes to trial should know and should be admonished, and there are plenty of cases that say that the effective assistance of counsel extends to plea negotiations, that when you go to trial, you know what you're faced with. Short thrift was given in the lower courts, in the state courts, to that argument because they basically argued and said, well, he was admonished that he could face 6 to 60 and that it would be consecutive. Well, 6 to 60 would be 12 to 120. And even that is wrong, if we want to get technical. He was charged with five counts in the first case of predatory criminal sexual assault. If convicted of each count, they are to run consecutive. There's no discussion about merger at that point, or at least when he was initially admonished, so that would be a minimum of 18 years on the three counts of predatory criminal sexual assault, I'm sorry, in the first case. And in the second case, there were two counts, so it would have been 6 and 6, which is 12. If you combine those two cases together, you're looking at a minimum of 18 if convicted on all counts in case one, and a minimum of 12, well, you can't. The only sentence of convicted in case 12 is life. It's really a foolish admonishment to say you can receive anything other than life after you've been convicted of the first count of predatory criminal sexual assault. Once you're convicted of the second count, there is no discretion, and that was lost on the lower courts. They said, well, you're faced with essentially what would be life anyway. De facto life is how they refer to it. And while that may be true, even that is not terribly correct. Well, what I'm trying to focus on is the nature of the disparity here because the way it was framed up as a disparity between 18 and life, mandatory life, but it's really a disparity between what he says he was offered, 18 years, and what he thought his exposure was, was 12 to 120, right? That's what he thought his exposure was. So that's the disparity in question for purposes of the Missouri versus Fry question about whether he would have taken the deal. So the disparity doesn't – I mean, it shakes out a little bit differently. Well, when one is elected to go to trial and they don't know that if convicted in both cases that they are faced with mandatory life. Right, but if you couple the correct focus of the disparity question with the statements that he made during his allocution that he would have taken the case to trial no matter what because he was absolutely innocent and he would not have accepted a plea deal, that makes the credibility findings of the circuit court, the post-conviction court, pretty solid. Well, I understand they made this credibility decision. I think it's a sketchy decision, but we have to defer to it, and I respect that. And the question that was certified on appeal by – Well, there's no certified question on appeal. A certificate of appealability. I know you're not bound by it. Right, we're bringing up the whole order, so the whole order is here. We don't have to frame the question the way the district judge did. But I think it's worth focusing on. That disparity is real, and I think there are – Well, the question is whether it's clear and convincing evidence to overturn the state court's credibility decision, which is presumed correct. In this case, I submit it would because he was never led to believe correctly that he could even receive a sentence of 12 years, 6 and 6. I mean, that's not an accurate assessment when he is making the determination whether to go to trial. And I don't think you can deforce yourself from the other considerations that he had been led to believe. He could receive even a lesser sentence with no trial tax if he had gone to trial. Thank you. Let's see my time's up. Thank you. Thank you. Ms. O'Connell? May it please the Court? I'm Assistant Attorney General Erin O'Connell on behalf of the respondent. We are here in habeas review, so the question before this Court is whether the trial judge's presumptively correct credibility determination is rebutted by clear and convincing evidence in the record. Petitioner has failed to meet his burden. On the initial question, is this a subjective or an objective inquiry? Ultimately, the question is subjective in the sense that the question is whether he, this petitioner, would have accepted the plea offer that was presented to him at the time. So the credibility of his own testimony is ultimately central, the credibility of his assertion that he would have taken the deal. The trial judge's credibility determination is well supported by the fact that he gave testimony that was rebutted by the record. And the Court has already noted that there are several key facts in this record that underscore that this was the correct determination. The most important piece of evidence, and it's an unusual piece of evidence in this type of case, is his own contemporaneous assertion at the sentencing hearing after he's learned that he's facing a mandatory life sentence. He says, even if I knew before, and I'm paraphrasing a bit, but even if I had known what the outcome would be here, I still would have rejected the plea because I'm innocent and I can't bring myself to admit to something that I didn't do. Forgive me, but if everything's the same here, but the Court had told him he's facing between one and 60 years, let's say, and the government said, well, I'll give you a one-year plea deal. But he rejects the one-year plea deal and then finds out that he's being sentenced to mandatory life at sentencing. Do you think the facts that I just described change anything at all about the prejudice analysis? I don't think they change the analysis in this case, where this petitioner has already said, I wouldn't have been willing to plead guilty because I'm innocent and I can't admit to something I didn't do. Under those circumstances, and this is often what happens when presented with a lenient plea deal, there is a group of defendants that won't act what we consider rationally. They'll say, I want to roll the dice. I want to try for an acquittal. I'm innocent and I can't admit to what I didn't do. This defendant falls within that category where the disparity is not the key issue here. It's that his knowledge of the disparity was not the decisive factor in his decision whether to plead guilty or not. The decisive factor for him was a desire to seek an acquittal and maintain his innocence. And he even continues to maintain his innocence. That was something that was also addressed at the post-conviction evidentiary hearing, where he was testifying that he would have accepted the deal, but on cross-examination he conceded, I'm innocent, and I believed at the time that I had a strong defense. I had an expert in my camp that I was going to present, and he testified himself. So going into this, he did think that he had an alternative and he was going to seek an acquittal on all these charges. From your perspective, Ms. O'Connell, what is the evidence that supports the state court's determination that in fact he knew that he was facing a mandatory life sentence? So there's no evidence that he knew he faced mandatory life. And that's why we've conceded deficient performance here. There is no evidence that he received that piece of information, and that was certainly important information that counsel at least should have imparted. Somewhat to that point, though, the trial court, when it admonished him on the sentences that he faced, informed him that he faced a potential of 120 years. In the hypothetical the court gave, he said you have two cases. You can be sentenced in the two cases and served consecutively. You face up to 60 years in each. And he illustrated that the defendant was therefore facing up to 120 years. That's meaningfully similar. I mean, it's the de facto life sentence for anyone. And so he had information that he was faced with the potential of life in prison. But as to— Discretionary, not mandatory. Correct. So that's the piece of information that was missing from his calculus. He was not informed that it was mandatory under the statute, and it was. And ultimately, that's why he received the life sentence. The court had no discretion. So there is no evidence that he had that information. But at his sentencing hearing, he knew that he faced mandatory life because the prosecutor at the end of the trial said, please revoke his bond. He's facing a life sentence. He had that information, and he went and he proposed his statement in allocution. And he said, even if I had known, I still would not have pleaded guilty. Did he know it was a mandatory life sentence? Yes. So the prosecutor's statements on the record were that the court should revoke his bond because he was facing a life sentence. So that— Well, no, no. That wasn't the question. Mandatory life. From the prosecutor— When you say facing a life sentence, it could also allow for a lot more. I believe the prosecutor did refer to it as being mandatory life, but he was on notice that his bond had been revoked because he was facing a life sentence. So certainly he had additional information in front of him at that time. Was that a life sentence without possibility of parole, or was there a parole possibility? There is—his current sentence is natural life without the possibility of parole. There would have been a difference if he had gotten a term of years. Yeah. Did he understand? Anybody tell him that? Did he ever hear anybody say this is a mandatory life sentence without possibility of parole? No. And we don't dispute that those words didn't come from the court at the time of the hearing. That enters into the calculus, doesn't it, if he thought he was going to get a term of years. He also thought he could get some time off. It's certainly relevant, and it's a piece of information that he should have had in weighing his decision. However, I would note that this is the only piece of evidence that he cites to overcome the trial court's credibility determination, but there are other factors that bear in this analysis. We have his contemporaneous statements. We have the fact that he made a few false statements in his testimony at the post-conviction evidentiary hearing. And then I think most critical, in cases like this, there's typically some evidence in the record that there was at some point a willingness to plead guilty, a course of negotiations, some statement. Oftentimes the defendant, for example, will come in to plead guilty, and he'll receive Roni's information, and he'll change his mind. So there is often in the record some corroboration that there was a willingness to plead guilty. Often there is also a sort of immediate statement on learning of the sentence by a defendant of surprise that he'd received this sentence, an allegation that I didn't know that I confronted this, and some assertion of ineffective assistance could have been raised at that point. He didn't raise any allegation related to this issue until he had gotten to post-conviction. On his direct appeal and in his post-trial proceedings, his focus was on his innocence. The evidence was insufficient. This was unreliable testimony. So a key factor in these cases that have been cited by petitioner where they have found prejudice has been some sort of contemporaneous corroboration that there was an openness to pleading guilty, and we have the opposite here. We know from his own statements that he remained determined to assert his innocence even as of the sentencing hearing when he knew more definitively that he was confronting a life sentence at that point. And I would just really briefly address that he also has a second showing he has to make, and I haven't heard it addressed either in his briefs or in his argument today. He also has to show reasonable probability that the trial court would have accepted the plea bargain. He has offered no evidence that that's the case and has failed even to argue the point. This court could affirm the judgment of the district court on that basis alone. The state judge who presided at trial, she also presided at the post-conviction hearing, am I right? I believe so. She never said anything about this 18-month sentence, whether she would have approved it or not, did she? No, so the written order at the post-conviction stage just noted that he hadn't met his burden and introduced any evidence on that point, but there was no statement. We don't have a subjective statement from the judge one way or the other. So I don't mean to intimate that I'm inclined this way, but I do need to get your view on something in case I get inclined that way in the next couple of months when we're all figuring this out. If we disagree with you and decide the writ must issue, what is the remedy? So Lafleur v. Cooper kind of sets out how the remedy should work in these cases. The ultimate goal is to correct the constitutional error. Here it would be to return the parties to the plea negotiation stage. There's really no alternative here. There certainly couldn't be specific performance of the deal. We don't even know the full terms of the deal. They aren't in the record. So the best remedy in this case would be to vacate the conviction and return the parties to where they were at the time this constitutional error occurred and allow plea negotiations to resume. But we would ask that this court affirm the district court's judgment denying the habeas petition. Thank you. And he has served 10 years, correct? I believe he's served 10 years, correct. So he hasn't even quite served the amount that he would have served under the plea agreement, knowing what the terms were at 18 years at 85%. Thank you. Mr. Sabin, your time has expired, but if you have anything further to say in rebuttal, you can have an extra minute. I would just submit that it cannot be lost on the court that Mr. Connor was relying on his incompetent lawyer's advice about whether to accept a plea, whether to proceed to trial, and if he does go to trial, what he can expect. He's still relying on this attorney who led him to believe that there would not be much of a trial tax. This lawyer didn't even know that he faced mandatory life. He showed up at sentencing with mitigation evidence and asked the court to sentence him to six and six. That wasn't even a possibility. And now this man is stuck with a life sentence. And yes, he said what he said at sentencing. That's a problem. And I submit that the disparity here is so great in terms of what he thought he was faced with and what he ultimately received, that that should clearly and convincingly rebut, as Judge Colin Bruce said, that should rebut the credibility determinations that the court made and rise to the level. He actually said that was not the case. It did not. Judge Bruce actually said it did not. No, but that's the issue that should be considered. Does it rise to the case? Is the disparity so great? I submit that it is. I submit that there's a host of cases across the country that talk about disparity. I submit the only difference is, in this case, Mr. Conner did say in a statement of allocution that he waived his innocence. And while that's a problem, as a defense attorney of 30 years, I discuss with clients what they're going to say in allocution. And I would have made it very clear to my client that he remained silent rather than say something like that. And you can't dismiss the fact that this lawyer, his standard fell below what is constitutionally required. And I think it's so grave that it does rise above the credibility determinations that there's any number of reasons why someone would continue to waive their innocence. But be that as it may, I would ask that the courts overturn the convictions and either reinstate the plea offer or ask that it be explored again, as counsel suggested. All right. Thank you very much. Our thanks to all counsel. The case is taken under advisement. And that concludes today's calendar. The court is in recess.